**UNITED PARCEL SERVICE, INC., Plaintiff,**

**v.**

**CALIFORNIA PUBLIC UTILITIES COMMISSION et al., Defendants.**

**No. C–93–2196 MHP.**

United States District Court, N.D. California.

Dec. 2, 1993.

Dwight C. Donovan, Ellis Ross Anderson, Laurence Kurzrock, Anderson Donovan & Poole, San Francisco, CA, for plaintiff.

Peter Arth, Jr., Edward W. O'Neill, Timothy E. Treacy, Public Utilities Commission of the State of California, San Francisco, CA, for defendants.

## OPINION

PATEL, District Judge.

Plaintiff, United Parcel Service, Inc. ("UPS") brings this action against defendants, the California Public Utilities Commission and various officials in its employ (collectively, "CPUC"), for declaratory and injunctive relief pursuant to the equal protection clause of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The action is before the court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following opinion.

BACKGROUND

UPS is a common carrier of small parcels engaged in extensive interstate and intrastate transportation that is subject to regulation by the CPUC.[2] In 1938 UPS received an exemption from the CPUC's rate regulation of general common carriers which enabled it to alter its fee structure with greater flexibility than other carriers. The exemption was apparently predicated on the notion that UPS requires such flexibility because it competes directly with the United States Postal Service, which is unregulated. This exemption had continued unaltered since 1938.

Consistent with earlier rate increases and its special exemption, UPS raised its small parcel delivery rates on January 7, 1992 by filing tariff pages with the CPUC and scheduled the increases to take effect on thirty days notice. The CPUC accepted the tariff pages, and UPS assessed the new rates thereafter. Cal Pak Delivery, Inc., a UPS competitor, subsequently filed a complaint with the CPUC alleging that UPS had utilized the wrong rate increase procedure to institute its rate changes. UPS answered the complaint and, in response to it and to challenges to previous rate increases, filed a formal application in April 1992 asking the CPUC to clarify the procedures UPS was to follow when changing its rates under its longstanding exemption. The CPUC consolidated the two proceedings.

On February 3, 1993 the CPUC issued Decision No. 93–02–001 articulating for the first time that under the exemption UPS must file a formal rate increase application for rate increases of any magnitude. By contrast, at that time all other common carriers within the state could, on ten days notice, increase rates up to ten percent without seeking CPUC approval.[3] Nothing in the decision addressed UPS's request that alternative ratemaking procedures be adopted in light of existing regulations, or UPS's request that CPUC honor an alleged stipulation by CPUC staff that it would continue to allow UPS to institute rate increases without CPUC approval. The decision did, however, give UPS an opportunity to amend its application within thirty days to propose alternative ratemaking procedures. Pursuant to California law, UPS filed for a rehearing of the matter with the CPUC on March 5, 1993 arguing that the decision was inconsistent with prior rulings and violated UPS's state and federal equal protection rights. The CPUC denied UPS's request for rehearing on May 7, 1993. On June 9, 1993 UPS sought review in the Supreme Court of California, and that court denied review without opinion on August 12, 1993.

On the same day UPS filed for review in state court, it filed the instant action seeking a declaration that the CPUC's requirement that UPS alone among carriers apply to the

1. Defendants filed the motion under Federal Rules 12(b)(1) and 12(b)(2) as a motion to dismiss for lack of jurisdiction, but at the hearing on this matter defendants conceded that it was more properly a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6).

2. All facts in this background are taken from UPS's factual summary as supplemented by the portions of the factual record submitted by the parties.

3. As of May 19, 1993 all other carriers are permitted to raise rates up to thirty percent without prior approval.

CPUC for any rate increase violates UPS's right to equal protection under the law. In addition UPS seeks an injunction against CPUC permanently enjoining it from treating UPS in a more restrictive manner than other small package carriers.

CPUC has moved to dismiss UPS's action pursuant to Federal Rule of Civil Procedure 12(b)(6) on four separate grounds. First, CPUC contends that UPS's equal protection claim was properly before the Supreme Court of California and that the denial of review of that claim has conclusive res judicata effect in this court. Second, CPUC contends that UPS still has a grievance pending before the CPUC such that UPS has failed to exhaust its administrative remedies as required by California Public Utilities Code § 1731(b). Third, CPUC contends that this action is barred by the Johnson Act, 28 U.S.C. § 1342, which limits the ability of federal courts to enjoin state ratemaking orders. Finally, CPUC contends that this court should abstain from exercising jurisdiction over this action pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In response, UPS argues that denial of review by the Supreme Court of California does not have any res judicata effect in this court because in its petition for review with that court UPS specifically reserved its right to litigate its federal constitutional claim in federal court. Second, UPS contends that it has exhausted its administrative remedies because it filed for and was denied rehearing of the February 3, 1993 CPUC decision and because the matter still pending before the CPUC involves different issues from those raised in this action. Third, UPS argues that the Johnson Act is inapplicable to this action because interstate commerce is implicated by the CPUC decision. Finally, UPS contends that *Younger* abstention is inapposite because actions taken by the CPUC are legislative, not judicial, and no special circumstances exist warranting abstention.

## LEGAL STANDARD

### A. *Conversion to Summary Judgment Motion*

Federal Rule of Civil Procedure 12(b)(6) provides that "if ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *See also Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1532–33 (9th Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985); 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1366 (2d ed. 1990). Conversion is proper where the parties have notice that the matter may be considered as a motion for summary judgment, and such notice is implied to parties that submit matters beyond the pleadings for consideration. *Grove*, 753 F.2d at 1533. In addition, where a motion to dismiss raises an affirmative defense not apparent on the face of the pleadings, such as res judicata, conversion to a motion for summary judgment is proper. *Suckow Borax Mines Consol., Inc. v. Borax Consol., Inc.*, 185 F.2d 196, 205 (9th Cir. 1950), *cert. denied*, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951); Wright & Miller, § 1366.

Both parties to this motion have submitted declarations and other evidence beyond the pleadings, and defendants' motion raises affirmative defenses. Accordingly, the court treats CPUC's motion as one for summary judgment.

### B. *Summary Judgment*

Summary judgment is appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to present evidence sufficient to support a verdict in its favor on every element of its claim for which it will carry the burden of proof at trial. *Id.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## DISCUSSION

Defendants' motion for summary judgment is premised on four grounds. Because the first, res judicata, disposes of this action, the court addresses only that ground.

### A. *Reservation of Rights*

██ CPUC contends that UPS cannot litigate its federal equal protection claim in this action because the Supreme Court of California had an opportunity to rule on that claim and its denial of review has conclusive res judicata effect in this court. In response, UPS argues that the denial of review does not have res judicata effect in this court because in its petition for review with the Supreme Court of California UPS specifically reserved its right to litigate its federal claim in federal court.[4]

In *England v. Louisiana State Bd. of Med. Exam.*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the Supreme Court held that "if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then ... he has elected to forgo his right to return to [federal] district court." *Id.*, 375 U.S. at 419, 84 S.Ct. at 466. Courts have since interpreted *England* to mean that if a party does *not* freely and without reservation submit federal claims to state court adjudication the party retains the right to return to federal court. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85 n. 7, 104 S.Ct. 892, 898 n. 7, 79 L.Ed.2d 56 (1984) (plaintiff forced to litigate an action involving federal claims in state court "can preserve his right to a federal forum for his federal claims by informing the state court of his intention to return to federal court on his federal claims"); *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1980) (specific reservation of right to return to federal court by plaintiff in state action rebuts claim that plaintiff freely and without

reservation submitted federal claims to state court adjudication).

Reservation of rights under *England*, however, is a narrow exception to the normal rules of res judicata and is not automatically available to every state court plaintiff with federal claims. *Tarpley v. Salerno*, 803 F.2d 57, 59–60 (2d Cir.1986). That is, *England* itself speaks only to circumstances where a plaintiff with federal claims files first in federal court and is then *forced* to litigate in state court because of federal court abstention. *England*, 375 U.S. at 412–15, 84 S.Ct. at 463–65. The rationale behind the rule articulated in *England* is the notion that "there are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, *without his consent and through no fault of his own,* to accept instead a state court's determination of those claims." *Id.*, 375 U.S. at 415, 84 S.Ct. at 464 (emphasis supplied). Indeed, while the Supreme Court has not specifically addressed the issue, every circuit to consider the question has limited application of *England* to circumstances where federal court jurisdiction has been invoked *first* and the federal court abstains, thereby *forcing* the plaintiff to litigate any federal claims first in state court. Furthermore, most of these circuits limit *England's* application solely to circumstances where the federal court has abstained pursuant to *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 182–83 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991) (*England* applies only in *Pullman* abstention, not *Younger* abstention where the federal court must respect the ability of state courts to resolve federal claims); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1072 (3d Cir.1990) (plaintiff who filed first in federal

---

4. In a footnote at the beginning of its petition, UPS stated:

> UPS discloses its federal constitutional claims in this Petition to permit the Court to resolve UPS' state law claims in light of its federal claim. However, UPS specifically reserves the right to have its federal claims adjudicated on

a complete record in the federal district court. An action in federal district court is being filed concurrently with this petition.

Decl. of Timothy Treacy in Supp. of Defs.' Mot. to Dismiss, Ex. C, Petition for Writ of Review, at 2 n. 1 [hereinafter "Petition for Writ of Review"].

court and was *forced* to litigate first in state court against its will was entitled to reserve its right to *return* to federal court); *Duty Free Shop, Inc. v. Administracion De Terrenos De Puerto Rico*, 889 F.2d 1181, 1183 (1st Cir.1989) (*England* applies only in *Pullman* abstention, not *Younger* abstention which is premised on a reluctance to interfere with state court resolution of federal and state claims); *Schuster v. Martin*, 861 F.2d 1369, 1374 (5th Cir.1988) (*England* applies only where there has first been abstention by a federal court), *reh'g denied*, 866 F.2d 1417 (5th Cir.1989); *Tarpley v. Salerno*, 803 F.2d 57, 60 (2d Cir.1986) (same).[5]

Under the *England* doctrine thus developed, the proper threshold inquiry is not whether UPS reserved its right in its petition for review with the Supreme Court of California to litigate its federal claims in federal court, but rather whether UPS was *forced* to litigate in state court against its will.

The facts reveal that on June 9, 1993, the same date this action was filed, UPS filed for review with the Supreme Court of California. At no point, however, did this court abstain in the federal action and force UPS to litigate its claims in state court. Further, nothing in the California statutory scheme required

UPS to pursue review of the CPUC decision in the Supreme Court of California—it chose to avail itself of both forums of its own volition.[6] That fact alone makes UPS's attempt to reserve its right to litigate its federal claim in federal court irrelevant. This conclusion is bolstered by the fact that, contrary to its contention now, UPS actually presented and argued its federal equal protection claim in its petition to the Supreme Court of California in spite of its purported reservation of that claim for federal review.[7]

UPS attempts to escape this result by arguing that it filed simultaneous actions with the expectation that this court would abstain pending resolution of the state court action. This argument is unpersuasive. If resolution of its federal claim in a federal forum was of the paramount importance it now asserts, UPS could have chosen simply to file its action in federal court. Or, having filed both actions UPS could have tried to accelerate these proceedings by filing for early injunctive or declaratory relief. Instead, however, it appears that UPS was intent not upon federal court adjudication of its claims, but rather on obtaining review of its federal claim in as many forums as possible; to that end it presented its federal equal

---

**5.** Without addressing the parameters of *England*, the Ninth Circuit has intimated a similar inclination as to its limits, noting that "when *Younger* abstention applies, federal plaintiffs cannot reserve their federal claim from state court adjudication for later decision by the federal court." *Beltran v. State of Cal.*, 871 F.2d 777, 783 n. 8 (9th Cir.1988).

**6.** California Public Utilities Code § 1756 requires an applicant who desires review of a CPUC decision to file a petition for review with the Supreme Court of California within thirty days. UPS argues that this requirement effectively forced UPS to file in state court or lose its opportunity to litigate its state law claims. This argument lacks merit. First, UPS could have done as it purported to do and raised only state law claims before the Supreme Court of California and brought its federal claims alone to federal court. In the alternative, UPS could have foregone the CPUC rehearing and state court review process altogether and come directly to federal court on its equal protection claim under 42 U.S.C. § 1983. Instead, UPS chose to file in both forums and to raise its federal claim in both courts, and made no effort to expedite litigation of this action.

**7.** UPS specifically invoked the federal equal protection clause on at least two occasions in its petition, and argued its case on both federal and state equal protection grounds throughout its petition. First, in its section entitled "ISSUES PRESENTED", UPS set forth the first issue as "has the California Public Utilities Commission violated the Equal Protection Clauses of the California *and the United States Constitutions* by classifying United Parcel Service, Inc. . . . . ." Petition for Writ of Review, at 1 (emphasis supplied). Second, in its section entitled "WHY A WRIT SHOULD ISSUE", UPS alleged that the CPUC decision "violate[s] the Equal Protection Clauses of the California *and United States Constitutions* . . . ." *Id.* at 2 (emphasis supplied). Throughout the remainder of the petition UPS referred to the alleged violation of its constitutional rights, without specifically limiting the scope to the California Constitution.

Furthermore, UPS argued before the CPUC in its application for rehearing that the February 3, 1993 decision violated its federal and state equal protection rights, and the CPUC specifically found that its decision did not violate UPS's equal protection rights. Treacy Decl. Ex. B, CPUC Order Granting a Limited Rehearing, at 3.

protection claim in both forums. As the First Circuit has held, "*England* does not afford a litigant two bites at the apple. Where, as here, a litigant has raised its federal claim in a state court, it may not subsequently relitigate the same claim in a federal court without doing violence to well-settled principles of finality and repose." *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 312 (1st Cir.1986); *see also Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85 n. 7, 104 S.Ct. 892, 898 n. 7, 79 L.Ed.2d 56 (1984) (allowing plaintiff to invoke *England* inappropriate where plaintiff "was in an offensive posture in her state-court proceeding, and could have proceeded first in federal court had she wanted to litigate her federal claim in a federal forum").

To allow UPS, which made a conscious choice to bring its federal claim in both federal and state court, to take advantage of the narrow *England* doctrine would violate the fundamental principle underlying that doctrine, namely that a federal court plaintiff with federal claims that is *against its will* forced to litigate its action first in state court should have the right to reserve its federal claims for federal court adjudication. UPS is not such a plaintiff, and, having chosen to bite the apple in state court, its attempt to

reserve its right to federal court adjudication of its federal claim fails.[8]

### B. Preclusive Effect

■ Under the federal full faith and credit statute, 28 U.S.C. § 1738, "it is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Accordingly, if the denial of review by the Supreme Court of California would have res judicata effect on California courts as to those claims raised in the petition, then that denial is res judicata in this court.

It is well established under California law that denial of review of a CPUC decision by the Supreme Court of California without opinion constitutes a final judgment and is res judicata in federal court. *Pacific Tel. and Tel. Co. v. P.U.C. of State of Cal.*, 600 F.2d 1309, 1311–12 (9th Cir.), *cert. denied*, 444 U.S. 920, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979) (reaffirming the continuing vitality of *Napa Valley Electric Co. v. Railroad Comm'n*, 251 U.S. 366, 40 S.Ct. 174, 64 L.Ed. 310 (1920)).

---

**8.** Nothing in the Ninth Circuit case cited by UPS, *Tovar v. Billmeyer*, 609 F.2d 1291 (9th Cir.1980), contradicts this conclusion. In *Tovar*, the plaintiffs reserved their right to proceed in federal court only after the federal court had abstained pending resolution of the state case. *Id.* at 1292–93. On a subsequent attempt to return to federal court the federal court again abstained. *Id.* Noting that from the outset plaintiffs had attempted to have their federal claims heard in federal court and had specifically reserved their right to return to federal court after the first abstention, the Ninth Circuit held further abstention improper. *Id.* at 1293. Thus, in *Tovar* the plaintiffs' right to return to federal court was upheld only because they had already once been denied access to federal court by a prior abstention.

UPS's heavy reliance at hearing on this motion on *Bally Mfg. Corp. v. Casino Control Comm'n*, 534 F.Supp. 1213 (D.N.J.1982), is also misplaced. The plaintiff in *Bally* did precisely what UPS could have done here but did not—sought injunctive relief that led the court to abstain pursuant to *Pullman*. *Id.* at 1215–18. The *Bally* court abstained under *Pullman* pending resolution of the state court action with the admonition

that plaintiff had a right to return under *England* because they had reserved their right to do so in their state action. The critical distinction between *Bally* and the instant action is the same critical factor found in all of the *England* cases decided by the various circuits: in *Bally* the federal court abstained, thereby forcing the plaintiff into state court, while this court never so abstained. The fact that UPS *expected* this court to abstain pursuant to *Pullman* when it filed this action is irrelevant. If abstention was its goal or expectation, it could have filed quickly for a temporary restraining order or preliminary injunction to force the issue. Instead, it chose to file this action and then bide its time to see what happened in state court. Nothing in *Bally* (or any other of *England's* progeny) sanctions such an expansion of the narrow *England* doctrine.

Finally, the court notes, without deciding the issue, that had the court been presented the opportunity to abstain in this action pending the outcome of the petition to the Supreme Court of California it would likely have abstained pursuant to *Younger* rather than *Pullman*. This distinction is crucial because, as we have seen, *England* is inapposite when a federal court abstains under *Younger*.

As explained above, despite its current protestations to the contrary UPS did raise its federal equal protection claim in its petition for review with the Supreme Court of California. That court denied review of the CPUC decision without opinion, and that denial is entitled to res judicata effect in this court. Accordingly, CPUC is entitled to summary judgment on res judicata grounds.

CONCLUSION .

For the foregoing reasons, the court hereby GRANTS defendants' motion for summary judgment.

IT IS SO ORDERED.