UNITED PARCEL SERVICE,
INC., Plaintiff–Appellant,

v.

CALIFORNIA PUBLIC UTILITIES COM-
MISSION; Daniel Wm. Fessler; Patri-
cia M. Eckert, Defendants–Appellees.

No. 94–15079.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 17, 1995.

Decided Feb. 28, 1996.

Ellis Ross Anderson and Dwight C. Donovan, Anderson, Donovan & Poole, San Francisco, California, for plaintiff-appellant.

Timothy E. Treacy, Public Utilities Commission, San Francisco, California, for defendants-appellees.

Before: D.W. NELSON, T.G. NELSON, Circuit Judges, and KING,* District Judge.

T.G. NELSON, Circuit Judge:

United Parcel Service, Inc. ("UPS"), appeals the district court's summary judgment, dismissing UPS's 28 U.S.C. §§ 2201–2202 action against the California Public Utilities

---

\* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

Commission ("the CPUC" or "the Commission") on the basis of res judicata, following a California Supreme Court decision summarily denying review of UPS's claims. UPS contends that a February 3, 1993, rate-setting decision by CPUC violates UPS's state and federal constitutional rights. UPS further argues that the district court's res judicata ruling deprives it of a forum for its federal claims, which it reserved in its petition to the state court. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute. UPS, a common parcel carrier engaged in extensive interstate and intrastate transportation was, until recently, subject to regulation by the CPUC. On October 11, 1993, the Governor of California signed Assembly Bill No. 2015, amending the Public Utilities Code to deregulate carriers registered as "integrated intermodal small package carriers." UPS registered as this new type of carrier on January 1, 1994, and is thus no longer subject to CPUC's prospective regulation. The instant dispute concerns CPUC rulings affecting UPS's rates prior to the new legislation.

In 1938, the CPUC exempted UPS from certain rate regulations pertaining to general common carriers. The exemption, which was apparently granted in view of UPS's direct competition with the United States Postal Service, allowed UPS to change its rates without receiving prior approval from the CPUC. In January 1992, UPS raised its small parcel delivery rates in accordance with its exemption, and consistent with its usual practice, by filing tariff pages with the CPUC and scheduling increases to take effect on thirty days' notice. The CPUC accepted the tariff pages and UPS imposed the new rates beginning February 24, 1992.

A UPS competitor, Cal Pak Delivery, Inc., subsequently filed a complaint with the CPUC alleging that UPS had followed the wrong procedure in making its rate changes. UPS answered the complaint and filed a

formal application asking the CPUC to clarify the rate-making procedures UPS was to follow in keeping with its exemption.

The CPUC consolidated the two proceedings and on February 3, 1993, issued Decision No. 93–02–001 ("the Decision"), articulating for the first time that under the exemption UPS must file a formal rate increase application for rate increases of any magnitude. By contrast, all other common carriers within the state could, on ten days notice, raise rates up to 10% without getting CPUC approval.[1] While the CPUC in its Decision approved UPS's rate increase for future use as of February 3, 1993, it determined that the increase was "not just and reasonable" *prior* to that date because UPS had not followed the correct rate-making procedures.

The CPUC gave UPS an opportunity to amend its application within thirty days to propose alternative rate-making procedures. UPS filed an amended application on March 2, 1993, but withdrew it on November 5, 1993, apparently in light of the newly enacted California AB 2015, which ended the CPUC's rate-making authority over UPS. On March 5, 1993, pursuant to Cal.Pub.Util.Code § 1731, UPS filed for a rehearing with CPUC, arguing that the Decision was inconsistent with prior CPUC rulings and that it violated UPS's federal and state constitutional rights.

The CPUC denied UPS's request on May 7, 1993. On June 9, 1993, in keeping with the review provisions of Cal.Pub.Util.Code § 1756, UPS filed a petition for a writ of review in the California Supreme Court, reserving its right to a federal hearing on its federal constitutional claims pursuant to *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). On the same day, UPS filed an action in the federal district court.

On August 12, 1993, before the motion was heard in the district court, the California Supreme Court denied without hearing or comment UPS's petition for review. The CPUC moved to dismiss the federal action under Fed.R.Civ.P. 12(b)(6). After hearing

---

1. As of May 19, 1993, all other carriers may raise rates up to 30% without prior CPUC approval.

oral argument on November 12, 1993, the district court converted the CPUC's motion to one for summary judgment, and dismissed the action on res judicata grounds. *United Parcel Serv., Inc. v. California Pub. Util. Comm'n,* 839 F.Supp. 702 (N.D.Cal.1993). UPS timely appealed.

## ANALYSIS

### A. *Mootness*

 As a preliminary matter, we address the CPUC's contention that the case is mooted by recent legislation. Questions of mootness are reviewed *de novo. Aiona v. Judiciary of State of Hawaii,* 17 F.3d 1244, 1246 (9th Cir.1994). "The usual rule in federal cases is that an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date the action is initiated." *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973).

On October 11, 1993, the Governor of California signed Assembly Bill No. 2015, enacting § 4120 and amending §§ 212 and 3511 of the Public Utilities Code. The Bill was prompted by our decision in *Federal Express Corp. v. California Public Utilities Commission,* which held that state regulation of the trucking operations of intermodal small package carriers organized as air carriers is preempted by federal law. 936 F.2d 1075, 1078 (9th Cir.1991), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992).

The California Legislature stated that *Federal Express* "has seriously compromised the ability of the State of California to ensure the safety of the operations of providers of intermodal small package service." Section 1, Stats.1993, c. 1226 (AB 2015). In the interest of consistency and public safety, *see id.,* the new legislation acts, *inter alia,* to deregulate "integrated intermodal carriers," which are defined as those carriers which provide "air-ground transportation service for the packages or articles in both interstate and intrastate commerce." Cal.Pub.Util.Code § 4120.

UPS registered as an integrated intermodal carrier on January 1, 1994. The parties dispute whether the new legislation moots the instant controversy.[2] We hold that it does not.

The CPUC contends that the relief sought by UPS in the district court—a declaratory judgment that the CPUC's classification violates its equal protection rights and an injunction preventing the CPUC from enforcing its orders in accordance with its allegedly illegal classification—is prospective, hence moot in light of AB 2015, which terminates the CPUC's authority to classify UPS for rate-making purposes.

UPS maintains that the controversy is still alive because the new "statute does not relieve UPS or any other carrier coming within its definition from complying with any existing CPUC regulations or orders." According to UPS, enforcement of the Decision in question includes the following: 1) invalidation of UPS's February 24, 1992, tariff; 2) "the rendering of advice to the general public that UPS overcharged its shippers"; and 3) "potentially, the determination that refunds to UPS' shippers are in order."

While the CPUC stated in its briefs that UPS is no longer subject to its rate-making authority, a CPUC decision of March 22, 1995, submitted by UPS, indicates that the CPUC continues to assert such authority and that UPS may be liable for refunds to customers the CPUC ruled it had overcharged. *See* CPUC Decision No. 95–03–044. In question are rates charged by UPS between February 24, 1992, the date of its rate increase and February 3, 1993, the date of the CPUC decision approving the rates prospectively, but not retrospectively.

The CPUC reiterated and emphasized that "*to the extent that UPS has actually put such increased rates into effect, UPS has overcharged its customers,*" and maintained its ongoing jurisdiction over the matter, specifically with regard to refund claims, in no uncertain terms:

**2.** The district court did not comment on this aspect of the case, though urged by the CPUC to

do so.

We have a strong regulatory interest in maintaining jurisdiction over any complaints seeking refunds for any overcharges.... [W]e have in D. 93–02–001 already found that overcharges may have occurred during the period between February 24, 1992 and February 3, 1993, as a result of UPS charging rates which were on file with the Commission but not yet in effect because UPS had not yet obtained the Commission's approval of the rate increase as required by [Cal.Pub.Util.Code] section 454.

*Id.* Because UPS is still subject to suits for overcharge refunds pursuant to the CPUC's decisions, we hold the case is not moot.

### B. *Res Judicata and England Reservation*

The district court dismissed the action on the basis of res judicata and entered summary judgment in favor of the CPUC.[3] *See United Parcel Service,* 839 F.Supp. at 705–08. Dismissal on res judicata grounds is reviewed *de novo. Palomar Mobilehome Park Ass'n v. City of San Marcos,* 989 F.2d 362, 363 (9th Cir.1993).

UPS contends it "reserved" its federal constitutional claims for federal review according to the process laid out in *England v. Louisiana State Bd. of Med. Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The district court disagreed, deeming *England* applicable only where a litigant files first in federal court and the federal court abstains pursuant to *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), "thereby *forcing* the plaintiff to litigate any federal claims first in state court." *See UPS,* 839 F.Supp. at 705. Because the district court found that: 1) UPS was not *"forced* to litigate in state court against its will"; and 2) UPS "actually presented and argued its federal equal protection claim in its petition to the Supreme Court of California in spite of its purported reservation of that claim for federal review," *id.* at 706, it held that UPS was not entitled to take advantage of *England. Id.* at 707.

Before considering the district court's conclusions, we review *England* and its place in preclusion jurisprudence.

*England* provides that "a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims" should not be "compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims." 375 U.S. at 415, 84 S.Ct. at 464. The Court in *England* expressly sought to mitigate the plight of the litigant who, in obedience to *Government & Civic Employees Organizing Comm., C.I.O. v. Windsor,* 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957), advises a state court of his federal constitutional claims so that the state court might consider the questions before it "in light of" the federal issues, only to have the district court deny his federal claims on the basis of res judicata. *England,* 375 U.S. at 420, 84 S.Ct. at 467 (quotations omitted). The Court held that a litigant in these circumstances could "reserve" his right to return to federal court with his federal claims by:

> inform[ing] the state courts that he is exposing his federal claims there only for the purpose of complying with *Windsor,* and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions.

*Id.* at 421, 84 S.Ct. at 468.

While the majority focused on the *Windsor* dilemma, *id.* at 414–15, 84 S.Ct. at 464–65, it also had in mind the dilemma associated with *Pullman*-variety abstention doctrine. The *England* majority opinion made only passing reference to abstention, *id.* at 415, 84 S.Ct. at 464–65, and cited to *Pullman* in a footnote: "We are confident that state courts, sharing the abstention doctrine's purpose of 'furthering the harmonious relation between state and federal authority ...,' will respect a litigant's reservation of his federal claims for decision by the federal courts." *England,*

**3.** The CPUC's motion for dismissal was based on four grounds, the first of which was res judicata. *See United Parcel Service, Inc. v. CPUC,* 839 F.Supp. 702, 704 (N.D.Cal.1993). Because the district court found res judicata dispositive, it did not address the other grounds, and they are not at issue on appeal.

375 U.S. at 422 n. 12, 84 S.Ct. at 468 n. 12 (quoting *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941)). However, Justice Douglas, concurring, described at length the effect of *Pullman* on litigants with state and federal claims. *Id.* at 423–37, 84 S.Ct. at 468–76 (Douglas, J., concurring). *England* has since been read by most courts in light of *Pullman.*

Traditionally, under *Pullman,* a federal court stays and remits to state court cases involving the interpretation of a challenged state statute in order to avoid making an unnecessary or premature constitutional decision.[4] The remitted litigant may return to the federal court if his federal claim survives the state court adjudication. *See England,* 375 U.S. at 424–25, 84 S.Ct. at 469–70 (Douglas, J., concurring) (explaining *Pullman* as a doctrine of deferred jurisdiction rather than abstention proper).

As Justice Douglas framed the problem in *England:*

> The question now presented is how and when one who asserts his option to sue in the federal rather than in the state courts, but who is remitted to the state court for a preliminary ruling, loses his right to return to the federal court for a final adjudication on the constitutional issues.

*Id.* at 427, 84 S.Ct. at 471 (Douglas, J., concurring) (quotations omitted).

With both *Windsor* and abstention in mind, the *England* Court resolved that a party remitted to state court should be able to "reserve" his right to return to federal court with those claims following the state court judgment:

> [While] an explicit reservation is not indispensable[,] the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily did more than *Windsor* required and fully litigated his federal claims in the state courts. *When the reservation has been made, however, his right to return will in all events be preserved.*

*Id.* at 421–22, 84 S.Ct. at 468 (footnote omitted) (emphasis added).

■ Thus, while "a party [who] freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there ... forgo[es] his right to return to [federal] District Court," *id.* at 419, 84 S.Ct. at 467, a party who reserves his claims under *England* retains his right to a federal forum even where the state court of its own accord renders a decision on the federal question, or where the state court's holding "impl[ies] ... that the court considers the constitutional challenge to be without merit." *Id.* at 421, 84 S.Ct. at 467.

■ In short, *England* explicitly requires the plaintiff wishing to preserve his federal claims to: 1) "inform the state courts that he is exposing his federal claims there only for the purpose of complying with *Windsor,*" *id.* at 421, 84 S.Ct. at 468; and 2) desist from "freely and without reservation" litigating his federal claims in state court. *Id.* at 419, 84 S.Ct. at 466–67.

The courts have subsequently limited *England's* application in various ways. According to the district court, "every circuit to consider the question has limited application of *England* to circumstances where federal court jurisdiction has been invoked *first* and the federal court abstains, thereby *forcing* the plaintiff to litigate any federal claims first in state court." *See UPS,* 839 F.Supp. at 705. This is inaccurate. Several circuits have indeed held that litigants must file first in federal court and be subject to abstention in order to take advantage of *England. See, e.g., Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 182–83 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991); *Schuster v. Martin,* 861 F.2d 1369, 1373–74 (5th Cir.1988); *Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 311–12 (1st Cir.1986).

Yet other circuits have held that litigants may employ *England* whenever they find themselves in state court involuntarily, either because the federal court abstained or for

---

4. The federal district court may also certify the state law issue to the state supreme court, in those states where certification is accepted by the state court.

some other reason. *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1304–06 (11th Cir.1992) (listing as examples of involuntary situations cases where defendant in a non-removable state action wishes to pursue a federal counterclaim, or where federal law imposes a state court exhaustion requirement as a precondition of bringing the federal claim to federal court). *See also Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1071 (3d Cir.1990) (dismissing as dicta statements requiring federal abstention as a prerequisite to *England* reservation).

Most significantly for our purposes, this circuit has not required litigants to file first in federal court in order to reserve the right to a federal hearing under *England.* In *Tovar v. Billmeyer* ("*Tovar I*"), 609 F.2d 1291, 1294 (9th Cir.1979), we held that *England* applied even though the plaintiff brought his action to the *state* court first. We expressly rejected the argument that a plaintiff is barred from reserving his federal claims where he:

> (1) initially seeks relief in a state court and (2) has the opportunity to raise all his claims, both state and federal, in the state court. This is not the law. *England* does not so hold. A free and unreserved submission to the state court of all federal claims for complete and final resolution is necessary to bar return to the federal court.

*Id.* We reaffirmed this holding in *Tovar v. Billmeyer* ("*Tovar II*"), 721 F.2d 1260, 1267 n. 8 (9th Cir.1983), *cert. denied*, 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984).

■ The district court here distinguishes *Tovar I* in a footnote, stating that "plaintiffs there reserved their right to proceed in federal court only after the federal court had abstained pending resolution of the state case." A close reading of the case, however, shows the facts to be otherwise. According to *Tovar I*, the district court "noted [in its first abstention order] that the appellants *had filed* a 'Reservation of Constitutional Questions' in the state action." 609 F.2d at 1292 (emphasis added). This court stressed that the appellants had,

> from the early days of their dispute . . . sought to have their federal claims heard in a federal court. . . . [T]hey have been unsuccessful despite their explicit reservation of constitutional issues which the district court, in its original abstention decision recognized would preserve [his] "right to return to the federal court should the state court not resolve the federal questions to his satisfaction."

*Id.* at 1293 (quoting the district court order). The district court here thus misread *Tovar I* as requiring plaintiffs to exercise their *England* option by filing first in federal court and moving to state court only in the wake of an abstention.[5] *Tovar I* required neither of these prerequisites, but interpreted *England* broadly in light of the " 'unflagging obligation' of the federal courts to exercise the judgment given to them." 609 F.2d at 1293 (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976)).

Since *Tovar I* and *II* were decided, the precise scope of *England's* application has been questioned in light of the Supreme Court's decisions in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). *See e.g., Fields*, 953 F.2d at 1304; *Temple of the Lost Sheep*, 930 F.2d at 182–83; *Schuster*, 861 F.2d at 1373–74; *Fuller*, 782 F.2d at 311–12. In *Allen*, the Supreme Court determined in the context of issue preclusion (or collateral estoppel) that federal courts are required by 28 U.S.C. § 1738 "to give preclusive effect to state-court judgments whenever the courts of the State from

---

5. The district court notes, without explanation and without deciding the issue, that it would not have abstained under *Pullman*, but rather under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See UPS*, 839 F.Supp. at 707 n. 8. This is significant because the *England* reservation is not available when a federal court abstains pursuant to *Younger*, thereby declining rather than postponing jurisdiction as it would under *Pullman*. It is also peculiar, because, as UPS correctly observes, *Younger* abstention does not apply to rate-making proceedings, which are legislative in nature. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362, 109 S.Ct. 2506, 2515, 105 L.Ed.2d 298 (1989).

which the judgment emerged would do so." 449 U.S. at 96, 101 S.Ct. at 415. The Court extended this holding in *Migra* to cases of claim preclusion (traditional res judicata). 465 U.S. at 84, 104 S.Ct. at 897–98.[6]

Both *Allen* and *Migra* explicitly preserve *England* in dicta, however. The Court in *Allen* dismissed the argument that 42 U.S.C. § 1983 evinces any Congressional intent "to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous," after cautioning that preclusion does not apply where the litigant did not have a "full and fair opportunity" to litigate the issue in the earlier case. 449 U.S. at 101, 101 S.Ct. at 418–19.[7] The Court distinguished the case before it from *England* in a footnote, acknowledging that "[w]here a plaintiff properly invokes federal-court jurisdiction in the first instance on a federal claim, the federal court has a duty to accept that jurisdiction." *Id.* at 101 n. 17, (citing *England*, 375 U.S. at 411, 84 S.Ct. at 461).

In *Migra*, the Court noted that its holding was based on the fact that the petitioner could have proceeded first in federal court, but chose to take his case to state court. 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7. However, the Court observed,

> In the event that a § 1983 plaintiff's federal and state law claims are sufficiently intertwined that the federal court abstains from passing on the federal claims without first allowing the state court to address the state law issues, the plaintiff can preserve his right to a federal forum for his federal claims by informing the state court of his intention to return to federal court on his federal claims following litigation of his state claims in state court.

*Id.* (citing *England*, 375 U.S. at 411, 84 S.Ct. at 461).

We agree with the district court and the First Circuit that "'*England* does not afford a litigant two bites at the apple.'" *See UPS*, 839 F.Supp. at 707 (quoting *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 312 (1st Cir.1986)). However, we decline to limit *England's* application to cases where the litigant files first in federal court and is remitted to state court pursuant to *Pullman*. Our decision in *Tovar I* precludes such an analysis. In a recent decision we reaffirmed in dicta *Tovar I's* broad interpretation of *England*:

> [W]here a federal court abstains (*or could abstain*) and sends the plaintiffs to state court, *or where plaintiffs realize that abstention is likely and file a parallel action in state court*, [they] may be able to preserve a federal forum for their federal claims by expressly reserving the issues in state court.

*Clements v. Airport Authority*, 69 F.3d 321, 329 n. 8 (9th Cir.1995) (citing *England*, 375 U.S. 411, 84 S.Ct. at 461, and *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1071–72 (3d Cir.1990)) (emphasis added).

While *Migra* and *Allen* qualify the role of *England* reservation in preclusion jurisprudence, we do not conclude that they overrule *Tovar I*. Rather, the Supreme Court's decisions require us to focus on the voluntary nature of the litigant's appearance in state court, and on the opportunity granted him for a full and fair hearing on the merits of his federal constitutional claim. We consider each of these issues in turn.

1. *Was UPS "forced" to litigate in state court?*

Under *England*, a litigant should not be "compelled, without his consent and through no fault of his own, to accept ... a state court's determination of [his federal] claims." 375 U.S. at 415, 84 S.Ct. at 464.

---

**6.** *Migra* offers a brief explanation of the terms "issue" and "claim" preclusion, noting that the two effects are often collectively referred to as "res judicata." 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1. Issue preclusion, or collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.... Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigat-

ed, because of a determination that it should have been advanced in an earlier suit." *Id.* In the case before the panel, the district court apparently uses "res judicata" to refer to both issue and claim preclusion.

**7.** The petitioner in *Allen* did not dispute that he had received a full and fair hearing on the merits of his federal claim in the state court. *Id.* at 91.

The Court in *Migra* likewise emphasized the voluntary or involuntary nature of a litigant's state court posture in assessing the applicability of *England*. 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7; *see also Fields*, 953 F.2d at 1304 and n. 2 (considering and affirming ongoing applicability of *England* style reservation in a takings context).

■ UPS argues it was forced to bring the state suit in keeping with the California statutory scheme and that failure to do so would have caused it to forfeit its state claims forever. The district court found that neither of these claims amounted to compulsion. It observed that the statutory scheme did not require UPS to pursue review in the state court, and suggested that:

> UPS could have ... raised only state law claims before the Supreme Court of California and brought its federal claims alone to federal court. In the alternative, UPS could have foregone the CPUC rehearing and state court review process altogether and come directly to federal court on its equal protection claim under 42 U.S.C. § 1983.

*See UPS*, 839 F.Supp. at 706 & n. 6.

We are not persuaded by either of these suggestions. First, we do not agree that UPS "actually presented and argued" its federal claims in its petition to the California Supreme Court, as the district court concluded. *See id.* at 706 & n. 7. The district court based its conclusion on the fact that, while UPS reserved its federal claims in a footnote on the first page of the petition,[8] it included references to the Federal Constitution in its listing of the issues and its section on "Why a Writ Should Issue." *See id.*

■ One of the difficulties inherent in the *England* process is that a plaintiff walks a fine line between saying too little and saying too much. In *Lurie v. State of California*, 633 F.2d 786, 787–88 (9th Cir.1980), *cert. denied*, 451 U.S. 987, 101 S.Ct. 2321, 68 L.Ed.2d 844 (1981), this court held that a footnote reservation "buried on the 149th page of a motion" does not sufficiently inform a state court of the party's intent for *England* purposes. We hold that UPS's footnote reservation, made on the first page of a nine page motion, suffices for purposes of *England* reservation in this case. We also hold that UPS's flagging of the federal claim in the headings was not an attempt to "argue" the claim, but to apprise the state court of the existence of the claim so that the state court might rule "in light of" the federal claim, as urged by *Windsor*. 353 U.S. at 366, 77 S.Ct. at 839.

■ Second, had UPS foregone the CPUC and state court hearing and filed only in the federal district court, it would have lost the opportunity to adjudicate its state law claims. Under *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984), the Eleventh Amendment bars the federal court from issuing injunctive relief on the basis of state law. UPS was thus precluded from seeking adjudication of its state law claims in the federal action. We do not believe that a party should be required to forfeit its state law claims as the price of obtaining a federal forum for its federal claims.

Finally, we observe that opting to avoid the CPUC and state hearing process would not have insured UPS a federal hearing, but would likely have forestalled it. We have held that a litigant may not seek to evade the preclusive effect of state review by foregoing the right to state court appeal. *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir.1988), *cert. denied*, 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988). *See also Ashbury Truck Co. v. Railroad Comm'n of California*, 52 F.2d 263, 268–69 (D.C.Cal.1931) (holding that motor carrier's motion to enjoin state railroad commission—an administrative precursor to the CPUC—was without equity where carrier failed to apply for rehearing or review by state supreme court), *aff'd*, 287 U.S. 570, 53 S.Ct. 94, 77 L.Ed. 501 (1932). In sum, had UPS gone straight to the federal district court with its equal protection claim, it would not only have lost its state law claims, but also have been subject to a res

---

8. The footnote reads in its entirety: "UPS discloses its federal constitutional claims in this Petition to permit the Court to resolve UPS' state law claims in light of its federal claim. However, UPS specifically reserves the right to have its federal claims adjudicated on a complete record in the federal district court. An action in federal district court is being filed concurrently with this Petition." (ER Tab 7 at 2 n. 1.)

judicata judgment by the federal court. Under these circumstances, we find that UPS was compelled to bring both actions, and hold that it did not thereby forego its opportunity to avail itself of *England.*

### 2. *Did UPS fully and freely litigate its federal claim?*

After holding UPS was not entitled to take advantage of *England* reservation, the district court turned to the question of preclusive effect, citing *Migra* for the proposition that under 42 U.S.C. § 1983, " 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' " *See UPS,* 839 F.Supp. at 707 (citing *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)).

■ As the district court observed, "[i]t is well established under California law that denial of review of a CPUC decision by the Supreme Court of California without opinion constitutes a final judgment and is res judicata in federal court." *See id.* (citing *Pacific Tel. and Tel. Co. v. CPUC,* 600 F.2d 1309, 1311–12 (9th Cir.)), *cert. denied,* 444 U.S. 920, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979) (affirming the ongoing vitality of *Napa Valley Elec. Co. v. Railroad Comm'n,* 251 U.S. 366, 40 S.Ct. 174, 64 L.Ed. 310 (1920)).

Under Cal.Pub.Util.Code § 1759, the California Supreme Court has exclusive state jurisdiction to review CPUC decisions. Access to the Supreme Court of California is by petition for a writ of certiorari or review, rather than by appeal. Where the California Supreme Court grants review, it receives the record, hears argument, and renders an opinion. In such cases, the due process requirements for issue preclusion are indisputably met. However, when the court denies review, it neither receives the record nor hears oral argument. The litigant whose petition

for review is denied thus cannot be said to have received a full and fair opportunity to litigate his claims. Where, moreover, the court issues a denial without opinion or comment, as it did in the case before us, the basis for the denial cannot be determined or reviewed.[9]

California nevertheless has traditionally held that such denials constitute res judicata for the purpose of federal review,[10] a practice approved by the Supreme Court in *Napa Valley Electric,* 251 U.S. 366, 40 S.Ct. 174, and by this court in *Pacific Telegraph and Telephone,* 600 F.2d at 1311–12, though questioned by scholars and practitioners. *See e.g.,* Boris H. Lakusta and David H. Renton, *California Supreme Court Review of Decisions of the Public Utilities Commission—Is the Court's Denial of a Writ of Review a Decision on the Merits?* 39 Hastings L.J. 1147 (1988).

■ While a state court judgment "[g]enerally ... has the same preclusive effect in federal court as that judgment would have in the courts of the rendering state," *Clements,* 69 F.3d at 328 (citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 465, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982)), there are certain exceptions to this rule:

> The primary exception ... is that we do not give preclusive effect to judgments rendered in proceedings that fail to comply with the minimum standards of due process. In other words, the party against whom preclusion is urged must have had a "full and fair opportunity" to litigate his claim.

*Clements,* 69 F.3d at 328 (citing *Kremer,* 456 U.S. at 480–82, 102 S.Ct. at 1897)).

"[S]ection 1738, by its own terms, applies to the judgments of state *courts* and not unreviewed administrative determinations." *McInnes v. State of California,* 943 F.2d 1088, 1093 (9th Cir.1991) (citing *University of Tennessee v. Elliott,* 478 U.S. 788, 794, 106

**9.** The California Supreme Court's heavy caseload permits it to review only a very small percentage of the writs it receives. (The court reviewed 7% of civil writs received in 1992–93. *See* Judicial Council of California, 1994 Annual Report.) We by no means wish to criticize the California Supreme Court's practice of summarily denying review in the majority of cases. Our concern is with the constitutionality of dismissing from federal court cases like the one before us on the basis of res judicata.

**10.** In 1979, the California Supreme Court held that while such denials constitute res judicata they do not effect stare decisis. *Consumers Lobby Against Monopolies v. PUC,* 25 Cal.3d 891, 160 Cal.Rptr. 124, 603 P.2d 41, 47 (1979).

S.Ct. 3220, 3223–24, 92 L.Ed.2d 635 (1986)). With regard to § 1983 claims, the Supreme Court held that, under federal common law,

when a state agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (citation and quotations omitted). The issue here is not the preclusive effect to be given to the CPUC's decision, but rather to the California Supreme Court's denial of UPS's petition for review. We observe, however, that the CPUC's constitutional determinations are not entitled to preclusive effect under California law. Cal.Pub.Util.Code § 1760.[11]

While we have serious reservations as to the propriety of according res judicata effect to the California Supreme Court's summary denial of a writ of review, where such a denial cannot possibly be said to have afforded the plaintiff a "full and fair opportunity" to litigate its federal claims, we are mindful of the affirmation granted this state practice by the Supreme Court and by this court. Because we hold that *England* reservation applies in the instant case, given the factors compelling UPS to file in the state court and the absence of a full and fair opportunity for UPS to litigate its federal claims in the state court, we need not resolve the larger issue of res judicata in this context. Under *England* as interpreted by this circuit, UPS properly reserved its right to a federal hearing on its federal constitutional claims.

The judgment of the district court is therefore reversed, and the case is remanded for further proceedings.

REVERSED AND REMANDED.

---

11. Cal.Pub.Util.Code § 1760 provides:

In any proceeding wherein the validity of any order or decision is challenged on the ground that it violates any right of petitioner under the Constitution of the United States, the [Califor-

nia] Supreme Court shall exercise an independent judgment on the law and the facts, and the findings or conclusions of the commission material to the determination of the constitutional question shall not be final.