**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOS ALTOS EL GRANADA INVESTORS,
a California limited partnership
dba Castle Mobile Estates,
  *Plaintiff-Appellant,*

v.

CITY OF CAPITOLA; CITY OF
CAPITOLA MOBILE HOME RENT
REVIEW BOARD,
  *Defendants-Appellees.*

No. 07-16888

D.C. No.
CV-04-05138-JF

LOS ALTOS EL GRANADA INVESTORS,
a California limited partnership
dba Castle Mobile Estates,
  *Plaintiff-Appellee,*

v.

CITY OF CAPITOLA; CITY OF
CAPITOLA MOBILE HOME RENT
REVIEW BOARD,
  *Defendants-Appellants.*

No. 07-17074

D.C. No.
CV-04-05138-
JF/PVT

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
March 12, 2009—San Francisco, California

Filed October 7, 2009

14331

Before: J. Clifford Wallace, Sidney R. Thomas and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

## COUNSEL

Robert S. Coldren, C. William Dahlin, and Mark D. Alpert (argued), Santa Ana, California, for the plaintiff-appellant.

John G. Barisone, Santa Cruz, California, and Henry E. Heater (argued) and Linda B. Reich, San Diego, California, for the defendants-appellees.

## OPINION

BYBEE, Circuit Judge:

Despite clear language from the Supreme Court establishing that "a state court determination may not be substituted, against a party's wishes, for his right to litigate his federal claims fully in the federal courts," *England v. La. State Bd.*

*of Med. Exam'rs*, 375 U.S. 411, 417 (1964), two California courts determined that this right to a federal forum was "irrelevant" and struck appellant's clear reservation of its federal claims from its complaint. The district court then determined that the actions of the California courts should be given preclusive effect in federal court. Although we agree that we must give full faith and credit to the state court's decision to strike the *England* reservation from the complaint, we conclude that doing so has no effect on the validity of appellant's reservation of federal claims. We thus reverse the judgment of the district court.

I

The complicated procedural history of this case reveals the sisyphean task that the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), has created for plaintiffs who seek to have their federal takings claims adjudicated in federal court. After a full complement of administrative appeals, three California Superior Court decisions, a California Court of Appeal decision, three federal district court decisions, and one prior federal appellate court decision, the plaintiff in this case assumed that it had properly exhausted its state law causes of action in state court and would be entitled to present its unadjudicated federal claims in federal court. Yet, the district court decided that in the process of exhausting its state law causes of action the plaintiff had created a bar to any subsequent assertion of federal claims in federal court.

The protracted legal struggle that is the basis for this appeal began on March 9, 2000, when appellant Los Altos El Granada Investors ("Los Altos"), owner of a mobile home park, "Castle Mobile Estates," located in the City of Capitola ("the City"), petitioned the City for license to increase rents on its mobile home pads from $200 to $500 per month. A 1970s-era mobile home rent control ordinance provides that mobile home rents can be increased in only two situations. First, an

"automatic increase" occurs in the event of an increase in the Consumer Price Index, and in such a case rent can be increased by no more than 60 percent of the increase in the Consumer Price Index. Second, mobile home park owners may effect a "discretionary increase" in rent to pass through increased operating costs, capital expenses, and capital improvements. This process requires that park owners work with mobile home owners and an arbitrator to determine the amount of the increase.

Los Altos submitted evidence to the City indicating that the rent control ordinance was permitting mobile home owners to sell their homes at a significant premium, essentially transferring wealth from mobile home park owners to mobile home tenants.[1] Los Altos's evidence suggested that the market price for a comparable mobile home pad not subject to rent control would be around $1200 per month, six times what Los Altos's tenants were paying. The City apparently disagreed with the import of this evidence. After deliberating, the City granted Los Altos a discretionary rent increase of $5.84 per month.

Los Altos filed two suits in federal court that were eventually consolidated. *See Hillsboro Props. v. City of Capitola*, No. C 01-20543 JF (N.D. Cal. 2001); *Los Altos El Granada Investors v. City of Capitola*, No. C 01-20667 JF (N.D. Cal.

---

[1]As the Supreme Court noted in *Yee v. City of Escondido*, 503 U.S. 519 (1992), "the term 'mobile home' is somewhat misleading," because "[the homes] are generally placed permanently in parks; once in place, only about 1 in every 100 mobile homes is ever moved." *Id.* at 523. Thus, "[w]hen the mobile home owner wishes to move, the mobile home is usually sold in place, and the purchaser continues to rent the pad on which the mobile home is located." *Id.* Los Altos claimed that because the City's ordinance prevented it from raising rents on new tenants who had purchased a mobile home already at the park, the existing owner would get a windfall, since the buyer would be willing to pay a premium to purchase a rent-controlled pad. Los Altos's expert evidence supported this hypothesis, asserting that although the book value of mobile homes sold in the park in the years 1998 and 1999 ranged from $5,632 to $16,445, the actual sales garnered between $39,500 and $95,000.

2001). Los Altos alleged both as-applied and facial challenges to the City's rent control ordinance—its complaint asked for relief for violations of the Fifth and Fourteenth Amendments, and also requested a writ of administrative mandamus. The City moved to dismiss, arguing that the Supreme Court's decision in *Williamson* required Los Altos to seek (and be denied) relief in state court first before bringing its claims in federal court. *See* 473 U.S. at 192-95. The district court agreed and dismissed the action, holding that to the extent Los Altos was asserting facial claims it was barred by the statute of limitations, and to the extent it was asserting as-applied claims it needed to first contest those claims in state court. The district court dismissed Los Altos's amended complaint on the same grounds, and we eventually affirmed those dismissals. *See Los Altos El Granada Investors v. City of Capitola*, 97 Fed. App'x 698 (9th Cir. 2004).

In an attempt to ripen its federal claims under *Williamson*, Los Altos filed a suit in Santa Cruz Superior Court on July 3, 2002, seeking several types of relief. It sought a declaratory judgment that the Ordinance, as applied to Los Altos, had effected a taking of property under the California Constitution, resulted in a violation of Los Altos's due process and equal protection rights under the California Constitution, and failed to provide Los Altos with a just and reasonable return under the California Constitution. Los Altos also asserted a cause of action for inverse condemnation and asked for a writ of administrative mandamus to overturn the City's decision denying Los Altos's full discretionary rent increase.

In its complaint, Los Altos asserted an *England* reservation: it "reserv[ed] for independent adjudication in the federal courts . . . all federal questions, including but not limited to any federal Fifth Amendment and Fourteenth Amendment claims for a taking of property, due process or equal protection, for adjudication before the United States District Court." Los Altos expressly cited *England*.

On September 15, 2003, the Santa Cruz Superior Court sustained the City's demurrer to Los Altos's causes of action for declaratory relief and inverse condemnation, holding that to the extent that these causes of action asserted facial challenges to the ordinance they were barred by the statute of limitations and the "res judicata/collateral estoppel effect" of the first district court decision. The court also held that to the extent these causes of action asserted as-applied challenges, they were not ripe until Los Altos had completed the process of requesting a writ of administrative mandamus.[2] The Superior Court also granted the City's motion to strike Los Altos's *England* reservation from its complaint, holding that the reservation was "irrelevant and not proper in the context of this case." The Superior Court failed to explain why the reservation was "irrelevant."

Meanwhile, on August 20, 2003, Los Altos had filed a new action in the district court, re-alleging its federal claims. *See Los Altos El Granada Investors v. City of Capitola*, No. C03-3859 JF (N.D. Cal. 2003). Los Altos argued that it had adequately ripened its state law causes of action under *Williamson* because the Superior Court had denied its rights to compensation by sustaining the City's demurrer. The district court disagreed and dismissed the action on November 13, 2003, holding that Los Altos had not yet exhausted its state causes of action and declining to exercise supplemental jurisdiction over the writ petition.

---

[2]California has created its own version of *Williamson. See Kavanau v. Santa Monica Rent Control Bd.*, 941 P.2d 851 (1997). California requires plaintiffs to first exhaust their administrative remedies before their takings causes of action become ripe for adjudication in the state courts. *See County of Alameda v. Superior Court*, 34 Cal. Rptr. 3d 895, 900 (Cal. Ct. App. 2005) ("Thus, under both federal and California law, before a plaintiff may establish a regulatory taking, it must first demonstrate that it has received a final decision from the land use authority regarding application of the challenged land use regulation to its property.").

Back in Santa Cruz Superior Court, the petition for a writ of administrative mandamus was argued and decided. On May 25, 2004, the court held a motions hearing in which it announced its intention to deny the writ petition. Although Los Altos argued that if the court was denying the writ petition its state law takings causes of action were no longer moot, and therefore asked for leave to reassert the state law inverse condemnation cause of action, the court rejected this request and stated that "[it] would be a cleaner procedure . . . to let the park owners then appeal this and have the Appellate Court determine any aspects of taking and anything else." The Statement of Decision, prepared by the City and filed on June 25, 2004, implemented the Superior Court's oral decision, and Los Altos filed an appeal to the California Court of Appeal.

On December 3, 2004, after judgment was entered by the Superior Court, Los Altos also filed another action in the district court (the present case). *See Los Altos El Granada Investors v. City of Capitola*, No. C04-5138 JF (N.D. Cal. 2004). The complaint alleged five claims: (1) a Fifth Amendment regulatory taking claim under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), (2) a Fifth Amendment "private" taking claim, (3) a Fourteenth Amendment equal protection claim, (4) a Fourteenth Amendment due process claim, and (5) a claim that the taking should be invalidated for failure to "substantially advance" a legitimate state interest.

The City filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. The district court granted that motion in part on July 26, 2005, holding that Los Altos's "failure to substantially advance" claim was no longer viable after the Supreme Court's decision in *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005). As to the remaining claims, the district court held that they were now ripe for purposes of *Williamson* but concluded that it should abstain from considering them, under *Younger v. Harris*, 401 U.S. 37 (1971), until the state appellate court had announced

its ruling. *See Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004) (en banc) ("[W]hen damages are at issue rather than discretionary relief, deference—rather than dismissal—is the proper restraint [under *Younger*].").

A year later, on May 17, 2006, the California Court of Appeal reversed the prior judgment of the Santa Cruz Superior Court in part, and remanded to the Superior Court to allow Los Altos to state its ripened as-applied state law takings causes of action. *Los Altos El Granada Investors v. City of Capitola*, 43 Cal. Rptr. 3d 434, 456 (Cal. Ct. App. 2006). The court, however, upheld the Superior Court's decision to strike the *England* reservation, reasoning that because the reservation was made before district court proceedings were filed and in the context of a *Younger* abstention rather than an abstention under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), the court did not err in determining that an *England* reservation was irrelevant. *Los Altos*, 43 Cal. Rptr. 3d at 452-54.

On September 18, 2006, Los Altos took the remand provided by the California Court of Appeal and filed an amended complaint in the Superior Court. The complaint asserted causes of action for inverse condemnation, a violation of the equal protection clause of the California Constitution, and a violation of the due process clause of the California Constitution. It also renewed Los Altos's attempt to reserve its federal claims under *England*.

The City demurred, and the Superior Court sustained that demurrer on December 19, 2006. The Superior Court concluded:

> [P]laintiff's first cause of action is barred by *Kavanau v. Santa Monica Rent Control Board*, 16 Cal. 4th 761 (1997), because it has been established that plaintiff is receiving a fair return on its property. The Court finds that plaintiff's second cause of

> action for violation of equal protection is a time-barred facial challenge to the ordinance. The Court finds that plaintiff's third cause of action for violation of procedural due process was originally brought as part of plaintiff's administrative writ petition, but subsequently abandoned both at the writ hearing and on appeal.

The Superior Court also struck Los Altos's renewed *England* reservation, holding that the earlier decision of the California Court of Appeal barred the reassertion of that reservation.

After the Superior Court's decision, Los Altos moved on November 17, 2006 to lift the stay in the district court action. The district court lifted the stay on February 26, 2007, after Los Altos declared that it would not appeal the Superior Court's decision. The City moved for judgment on the pleadings, arguing that the final judgment in the Superior Court barred Los Altos's claims in the district court under the doctrines of claim preclusion and issue preclusion. The district court granted the City's motion. It held that because "California takings jurisprudence is congruent with federal law . . . the Superior Court's adjudication of California takings claims is equivalent to the adjudication of their federal counterparts, and the doctrine of issue preclusion also bars the relitigation of those claims as federal claims." Because all of Los Altos's other constitutional claims could have been litigated before the Superior Court, the district court held that they were barred by claim preclusion. Although the district court noted that a successful *England* reservation might prevent claim preclusion, it held that because Los Altos had failed to appeal the Superior Court's second striking of the *England* reservation, it would give that decision "preclusive" effect as well.

## II

Before addressing the merits, we must decide whether the district court abused its discretion in granting Los Altos's

motion for an extension of time to file an appeal. *See Pincay v. Andrews*, 389 F.3d 853, 858 (9th Cir. 2004) (en banc). Judgment was entered in the district court on June 25, 2007. Thus, the deadline for filing a non-permissive appeal elapsed after July 25, 2007. *See* FED. R. APP. P. 4(a)(1)(A). On August 6, 2007, twelve days after this deadline, Los Altos filed a motion with the district court requesting an extension of time to file its notice of appeal. Although the City opposed this motion, the district court granted the request for an extension, finding that Los Altos's failure to file a timely appeal was caused by excusable neglect. The City appealed from this decision.

**[1]** Federal Rule of Appellate Procedure 4(a)(1)(A) requires a party in a civil case to file a notice of appeal with the district court clerk "within 30 days after the judgment or order appealed from is entered." Nevertheless, the rule also allows a party to move for an extension of time to file a notice of appeal if two things are true: first, the party files its motion "no later than 30 days after the time prescribed by this Rule 4(a) expires;" and second, "regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause." FED. R. APP. P. 4(a)(5)(A). Because Los Altos filed for an extension of time within the thirty-day window for filing such a motion, the only question is whether the district court erred in determining that Los Altos showed excusable neglect or good cause.

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the Supreme Court created a four-part test for determining whether an attorney's failure to file is caused by excusable neglect. We have adopted this test for use in interpreting Federal Rule of Appellate Procedure 4(a)(5)(A). *See Pincay*, 389 F.3d at 855-56. Thus, we analyze "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including

whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Id.* at 855. In this case, neither party disputes that the first and second factors support the district court's grant of the motion: no prejudice would have resulted from a grant of the extension, and the delay was only twelve days. The City argues, however, that the remaining factors weigh against granting the extension.

Los Altos's filings in the district court were quite vague about why it missed the filing deadline. The declaration of counsel in charge of calendaring the appeal initially asserted that his law firm had "an established system for calendaring court deadlines, which provides for incoming pleadings and outgoing pleadings to be automatically routed." In somewhat contradictory fashion, however, counsel later admitted that the calendaring system was not entirely automated—he remarked that the error occurred when "the Court's decision on the merits was forwarded by me to my assistant, but I apparently did not forward the Judgment." Later, in its reply brief in support of its motion before the district court, Los Altos claimed that the error "[was] not one of simple inaction" but a system failure that occurred "because of a change in personnel." The reply brief claimed that the calendaring clerk at the firm never received the judgment "because of a turnover in that position." No declarations supporting this "change in personnel" were attached to the reply brief.

In *Pioneer*, the Court gave little weight to "upheaval in [a] law practice" as a compelling reason for a filing delay. 507 U.S. at 398. Additionally, the error at issue here (failing to attach a document to an email) appears to be entirely within "the reasonable control of the movant." *See id.* at 395. Nevertheless, in *Pincay* we rejected any sort of "rigid rule" to determine excusable neglect—instead, we decided that we should give great deference to the district court's determination. *Pincay*, 389 F.3d at 859. The district court is simply "in a better position than we are to evaluate factors such as whether the

lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers . . ., and the likelihood of injustice if the appeal was not allowed." *Id.*

**[2]** We cannot conclude that the district court abused its discretion in determining that counsel's neglect was in good faith and excusable. Although the City argues that Los Altos may have had surreptitious motives for failing to file a timely notice of appeal, all the evidence before the district court suggests the opposite conclusion—whatever the precise contours of counsel's failure to calendar the appeal, there is nothing to intimate that the failure was not one of mere oversight. Also, although counsel's failure to calendar the appeal was based in part on a mistake within his control, we will defer to the district court's determination that such conduct was excusable. Thus, we affirm the district court's decision to permit Los Altos additional time for filing an appeal.

### III

We begin our discussion of the merits of the appeal by noting a fact that has apparently gone unaddressed by every court analyzing the applicability of Los Altos's *England* reservation: Los Altos submitted not one but *two* reservations in state court. It is clear that confusion over the two reservations has led to confusion over the effect of the reservations.

After being dismissed (with prejudice) from federal court for failing to satisfy *Williamson*, Los Altos made its first *England* reservation when it filed its first complaint in the Santa Cruz Superior Court. This reservation was stricken by the Superior Court as "irrelevant." While this and other aspects of that decision were being appealed, Los Altos attempted to return to federal court, arguing that its claims were now ripe under *Williamson*. The district court, however, stayed the action under *Younger* pending the state court appeal. The California Court of Appeal then affirmed the

striking of the original *England* reservation on the grounds
that Los Altos's case had been stayed under *Younger*—
reasoning that was entirely circular because the district court
had abstained under *Younger* only because of the pendency of
the state appeal. In other words, the California Court of
Appeal considered the *England* reservation inappropriate fol-
lowing *Younger* abstention, but the district court had
abstained under *Younger* only because the California appeal
was still pending—the *Younger* abstention *followed* the
*England* reservation. On remand to the Superior Court from
the Court of Appeal, Los Altos renewed its *England* reserva-
tion. The Superior Court then held that the California Court
of Appeal's decision was res judicata to a reassertion of the
reservation and struck Los Altos's second reservation.

In sum, Los Altos made two distinct *England* reservations,
each under different circumstances: Los Altos's original res-
ervation was made when no federal case was pending; and its
renewed reservation occurred after the district court had
abstained under *Younger*. Although it is unclear which
*England* reservation the district court thought was barred by
the preclusive effect of the state court decisions, for the rea-
sons we explain below, both reservations were valid when
made and were not undermined by the subsequent decisions
of the California courts.

A

Los Altos's original *England* reservation was valid because
it was made after Los Altos was forced to litigate in state
court by the exhaustion requirements of *Williamson*. More-
over, even if we give preclusive effect to the Superior Court's
decision to strike the reservation from Los Altos's complaint,
the validity of the reservation itself remains intact.

1

In *England*, the Supreme Court addressed the objection
"that a litigant who has properly invoked the jurisdiction of a

Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims." 375 U.S. at 415 (footnote omitted). The Court described two scenarios in which a putative federal court litigant has been forced to proceed in state court before he can return to federal court. In the one case, the litigant "freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there." *Id.* at 419. In that case, the litigant "has elected to forgo his right to return to the District Court." *Id.* In the second scenario, the litigant who is involuntarily in state court limits his causes of action to issues of state law, reserving his federal claims for resolution in federal district court. The Court was sympathetic to the dilemma faced by those litigants who, having been "shunted from federal to state courts," wish to avoid "procedural traps operating to deprive them of their right to a District Court determination of their federal claims." *Id.* at 418 (footnote omitted). In the second case, the Court considered that even if a litigant "must inform [the state] courts what his federal claims are, so that the state statute may be construed 'in light of' those claims," the litigant has not waived his right to return to district court. *Id.* at 420.

**[3]** The "uncertainties" of this latter scenario led the Court to recognize a procedure—commonly referred to as an "*England* reservation"—by which a litigant "may readily forestall any conclusion that he has elected not to return to the District Court": the litigant may state on the record that "should the state courts hold against him on the question of state law, [he will] return to the District Court for disposition of his federal contentions." *Id.* at 421. "When the reservation has been made . . . his right to return will in all events be preserved." *Id.* at 421-22 (footnote omitted).

The *England* rule is a salutary one. It preserves "the role of state courts as the final expositors of state law" as recognized

by the abstention doctrine, as well as the interests of putative federal litigants who have the "right . . . to choose a Federal court where there is a choice." *Id.* at 415. Additionally, the *England* rule protects "the primacy of the federal judiciary in deciding questions of federal law." *Id.* at 415-16 (footnote omitted).

Although some courts have attempted to limit the *England* reservation to the facts of that case, we have never read the case so narrowly. In *England*, the Court addressed a situation in which (1) the plaintiffs filed first in federal court; (2) the court abstained under the *Pullman* doctrine; and (3) the plaintiffs subsequently brought suit in state court. *See id.* at 412-13. Accordingly, some courts have precluded the *England* reservation where a litigant files first in state court, *see, e.g.*, *Schuster v. Martin*, 861 F.2d 1369, 1374 (5th Cir. 1988); *Tarpley v. Salerno*, 803 F.2d 57, 59-60 (2d Cir. 1986), while others have held *England* inapplicable where a district court abstains pursuant to *Younger* rather than *Pullman*, *see, e.g.*, *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 182-83 (2d Cir. 1991); *Duty Free Shop, Inc. v. Administracion De Terrenos De Puerto Rico*, 889 F.2d 1181, 1183 (1st Cir. 1989).

**[4]** In *Tovar v. Billmeyer*, 609 F.2d 1291 (9th Cir. 1979), however, we rejected an overly constrained approach to *England* and held that the reservation would be available even where "the plaintiff (1) initially seeks relief in state court and (2) has the opportunity to raise all his claims, both state and federal, in the state court." *Id.* at 1294. We reaffirmed this holding in *United Parcel Service, Inc. v. California Public Utilities Commission*, 77 F.3d 1178, 1183 (9th Cir. 1996), when we "decline[d] to limit *England*'s application to cases where the litigant files first in federal court and is remitted to state court pursuant to *Pullman*." *Id.* at 1185. We there reiterated:

> Where a federal court abstains (*or could abstain*) and sends the plaintiffs to state court, *or where plaintiffs*

*realize that abstention is likely and file a parallel action in state court*, they may be able to preserve a federal forum for their federal claims by expressly reserving the issues in state court.

*Id.* (quoting *Clements v. Airport Auth.*, 69 F.3d 321, 329 n.8 (9th Cir. 1995)) (alterations omitted). Although in *United Parcel Service* we acknowledged that the Supreme Court's decisions in *Allen v. McCurry*, 449 U.S. 90 (1980), and *Migra v. Warren City School District Board of Education*, 465 U.S. 75 (1984), had "qualif[ied] the role of *England* reservation in preclusion jurisprudence," we reaffirmed our "focus on the voluntary nature of the litigant's appearance in state court" and not on whether "the litigant first files in federal court and is remitted to state court pursuant to *Pullman*." *United Parcel Serv.*, 77 F.3d at 1185.[3]

**[5]** It is clear, therefore, that the validity of Los Altos's original *England* reservation was not undermined by the fact that no federal court had jurisdiction over the federal questions at the moment the reservation was asserted. Although the district court dismissed Los Altos's claims with prejudice under *Williamson*, and although Los Altos could have litigated its federal constitutional claims in state court, Los Altos plainly retained the right to make an *England* reservation in these circumstances. *United Parcel Serv.*, 77 F.3d at 1183; *Tovar*, 609 F.2d at 1294.

---

[3]Specifically, in *United Parcel Service* we held that an *England* reservation would forestall claim preclusion where the litigant was "forced to litigate in state court," 77 F.3d at 1185 (quotation marks omitted), and that the reservation would only prevent issue preclusion where the litigant did not "fully and freely litigate its federal claim" in state court, *id.* at 1187. Because *Williamson* ineluctably forces litigants into state court, a proper *England* reservation may prevent claim preclusion. *See id.* at 1186 (citing *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1303-07 (11th Cir. 1992)). As we have previously noted, however, the reservation alone cannot "enable [a litigant] to avoid preclusion of issues actually litigated in the state forum." *Dodd v. Hood River County* ("*Dodd II*"), 136 F.3d 1219, 1227 (9th Cir. 1998).

2

Having determined that Los Altos's original reservation of claims under *England* was permissible in this case, we must confront the primary question on appeal: whether the district court was correct to give preclusive effect to the Superior Court's striking of the reservation as "irrelevant."

The Constitution instructs the states to give "Full Faith and Credit . . . to the public Acts, Records, and Judicial Proceedings of every other State." U.S. CONST. art. IV, § 1. The Constitution also gives Congress the power to determine the contours of this deference. *Id.* ("And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."). In the course of prescribing such manner, Congress, through the Full Faith and Credit Act, codified at 28 U.S.C. § 1738, extended the recognition of state judgments to the federal courts. Section 1738 provides that state court "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

**[6]** The Supreme Court has interpreted the Act to require federal courts "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982); *see also Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986); *Allen*, 449 U.S. at 96. We "may not employ [our] own rules in determining the effect of state judgments, but must accept the rules chosen by the State from which the judgment is taken." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996) (quoting *Kremer*, 456 U.S. at 481-82) (internal quotation marks and alteration omitted). There are precious few exceptions to this requirement. We need not give a state court decision preclusive effect, for example, where the

state court "did not have jurisdiction over the subject matter or the relevant parties" and the question of jurisdiction was not litigated in the state court, *Underwriters Nat'l Assurance Co. v. N.C. Life & Accidental Health Ins. Guar. Ass'n*, 455 U.S. 691, 704-05 (1982), or if it is clear that a federal statute contains "an express or implied partial repeal" of § 1738, *Parsons Steel*, 474 U.S. at 523 (quotation marks and citation omitted).

**[7]** Applying the test created by § 1738, and absent an exception, we are required to give full faith and credit to the California Superior Court's decision to strike Los Altos's *England* reservation. California Code of Civil Procedure section 436 enables a court to, "upon a motion . . . or at any time in its discretion, . . . [s]trike out any irrelevant, false, or improper matter inserted in any pleading." CAL. CODE CIV. PROC. § 436(a); *see also Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 76 Cal. Rptr. 3d 325, 350 (Cal. Ct. App. 2008) (discussing the scope of section 436). Although it is "improper for a court to strike a whole cause of action of a pleading under [section 436]," *Quiroz v. Seventh Ave. Ctr.*, 45 Cal. Rptr. 3d 222, 241 (Cal. Ct. App. 2006), or to eliminate a "matter which is essential to a cause of action," *see Clements v. T. R. Bechtel Co.*, 273 P.2d 5, 14-15 (Cal. 1954), it may strike anything else it determines to be irrelevant. *See also White Lighting Co. v. Wolfson*, 438 P.2d 345, 355-56 (Cal. 1968). Here, the Santa Cruz Superior Court determined that Los Altos's *England* reservation, for whatever reason, was irrelevant, and struck the reservation from Los Altos's complaint. We do not understand why the reservation was irrelevant—and no justification was offered—but it is not our place to question California's administration of its notice pleading regime. The Superior Court's decision was a "judicial proceeding," and thus section 1738 instructs us to give it the same effect as it would be given by a California state court —that is, we do not stand as a court of collateral appeal and ordinarily cannot review matters of California procedure, even if we disagree with the state court's judgment.

**[8]** Although we think that the Santa Cruz Superior Court's attempt to deprive Los Altos of its choice of fora was a failure to follow *England*, we need not decide today whether to recognize an exception to the Full Faith and Credit Clause for such jurisdictional circumventions. Even granting full faith and credit to the Superior Court's decision to delete Los Altos's *England* reservation from its complaint, the Superior Court's action cannot have had any "preclusive" effect on the claims Los Altos can assert before a federal court, because an explicit, on the record reservation is not required to preserve federal claims. In *England*, the Court noted that a party "*may* accomplish [a reservation of federal claims] by making on the state record the 'reservation to the disposition of the entire case by the state courts.' " 375 U.S. at 421 (quoting *NAACP v. Button*, 371 U.S. 415, 428 (1963)) (emphasis added). Nevertheless, the Court did not specify a form for the reservation and cautioned that "an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily did more than [*Government and Civic Employees Organizing Committee, CIO v. Windsor*, 353 U.S. 364 (1957)] required and fully litigated his federal claims in the state courts." *Id.* Indeed, while the Court remarked that it was "confident that state courts, sharing the abstention doctrine's purpose of 'furthering the harmonious relation between state and federal authority,' [would] respect a litigant's reservation of his federal claims for decision by the federal courts," *id.* at 421 n.12 (quoting *Pullman*, 312 U.S. at 501 (internal citation omitted)), it also provided a backstop for cases like the one before us in which a state court might mistakenly attempt to eliminate that right. Specifically, the Court held that "evidence that a party has been compelled by the state courts to litigate his federal claims there will of course preclude a finding that he has voluntarily done so." *Id.*

**[9]** Although it appears clear that Los Altos did not press its federal claims in state court, we need not scrutinize the state court record to determine whether Los Altos may have

deliberately, incidentally, or accidentally "litigated its federal claims in the state courts." Even if Los Altos briefed its federal takings claims, the Superior Court's action in striking the explicit *England* reservation *by itself* preserves to us the jurisdiction to hear Los Altos's federal claims. Specifically, the Santa Cruz Superior Court's decision to strike the *England* reservation at the earliest opportunity demonstrates that "[Los Altos was] compelled by the state courts to litigate [its federal] claims there," *id.*, and we can conclude that Los Altos has not voluntarily litigated its federal claims in either the Santa Cruz Superior Court or the California Court of Appeal. The state courts were aware from the outset that Los Altos intended to return to federal court. Whether Los Altos accomplished this by asserting its *England* reservation in its complaint or by advising the court orally or by some other method, it gave the California courts full notice of its reservation, and that is all *England* requires.

## B

Although Los Altos's renewed reservation was made after the district court had abstained under *Younger*, this second assertion of its *England* rights was also valid because the district court did not dismiss the action but deferred it pending resolution of the decision of the California Court of Appeal. As with the first reservation, the Superior Court's decision to strike the renewed reservation had no effect on its validity.

## 1

The City argues that the renewed *England* reservation was not permissible because by that time the district court had abstained under *Younger* rather than *Pullman*, and that an *England* reservation may not follow *Younger* abstention. *Younger*, however, is not a *per se* bar to the articulation of the *England* reservation.

In *United Parcel Service* and other cases, we stated the general proposition that "the *England* reservation is not avail-

able when a federal court abstains pursuant to *Younger*, thereby declining rather than postponing jurisdiction as it would under *Pullman*." 77 F.3d at 1184 n.5; *see also Mission Oaks Mobile Home Park v. City of Hollister*, 989 F.2d 359, 362 (9th Cir. 1993), overruled on other grounds by *Green v. City of Tuscon*, 255 F.3d 1086 (9th Cir. 2001); *Beltran v. State of Cal.*, 871 F.2d 777, 783 n.8 (9th Cir. 1988). The reason *Younger* abstention generally precludes an *England* reservation is that, unlike in *Pullman* abstention, under *Younger* the federal court dismisses the action because there is nothing for it to decide. A reservation of federal claims is not available in the *Younger* context when "*Younger* abstention requires dismissal of the federal complaint" and thus "[t]he federal plaintiff must submit all claims, including any federal claims, to the state court." *Beltran*, 871 F.2d at 783 n.8 (citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)); *see also Gibson*, 411 U.S. at 577 ("Unlike those situations where a federal court merely abstains from decision on federal questions until the resolution of underlying or related state law issues . . . *Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts."). In essence, our prior opinions reason that to allow a litigant to reserve federal claims in state court after a federal court has determined that a state court is the only proper forum for such claims would allow a litigant to make an end-run around the federal court's dismissal order.

**[10]** Our en banc opinion in *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004), however, offered a more nuanced view of the relationship between *Younger* and *England*. In *Gilbertson*, we addressed whether *Younger* abstention applies to an action for damages under 42 U.S.C. § 1983. *See id.* at 968. We concluded that it did because "[d]amages suits that turn on a constitutional challenge to pending state proceedings implicate the reasons for *Younger* abstention as much as equitable or declarative relief actions because to determine whether the federal plaintiff is entitled to damages . . . the district court must first decide whether a constitutional violation

has occurred." *Id.* at 979. Nonetheless, we noted two fundamental differences between damages actions and suits for declaratory or injunctive relief that may require a different type of abstention under *Younger* for litigants seeking compensatory relief. Specifically, because damages actions request "relief [that] is not discretionary, and [that] may not be available in the state proceeding," a federal court should not dismiss the case under *Younger* but instead "ent[er] an order staying the federal action until the state proceeding has been completed." *Id.* at 980. From these differences we concluded that when "damages are sought and *Younger* principles apply, it makes sense for the federal court to refrain from exercising jurisdiction *temporarily* by staying its hand until such time as the state proceeding is not longer pending." *Id.* at 981. This procedure would:

> allow[ ] the federal plaintiff an opportunity to pursue constitutional challenges in the state proceeding (assuming, or course, that such an opportunity is available under state law), and the state an opportunity to pass on those constitutional issues in the context of its own procedures, while still preserving the federal plaintiff's opportunity to pursue compensation in the forum of his choice.

*Id.* In other words, because in damages cases there may yet be something for the federal courts to decide after completion of the state proceedings, the federal court cannot simply dismiss the action and require the plaintiff to assert all of his claims in the state court.

**[11]** These principles govern this case. Here, Los Altos seeks damages, not injunctive relief. The district court—quite appropriately—did not *dismiss* under *Younger* but *stayed* the proceedings pending the final decision of the California courts. That makes this case more like *Pullman* than *Younger*, and brings this case squarely within *Gilbertson*. Permitting an *England* reservation makes additional sense in this case,

where the district court recognized that it could abstain either under *Younger* or *Pullman* and chose to abstain under *Younger*.[4] As the Supreme Court has recognized, the boundaries between *Younger* and *Pullman* abstention are not well-defined, and "considerations similar to those that mandate *Pullman* abstention are relevant to a court's decision whether to abstain under *Younger*." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12 n.9 (1987). Having recognized this overlap and commented that "the right pigeonhole is not crucial," *Gilbertson*, 381 F.3d at 981, we would be remiss to accord the district court's terminology dispositive effect when deciding whether an *England* reservation is permissible. The mere fact that a district court abstains under *Younger* does not require us to ignore the *England* reservation, particularly where *Pullman* abstention would be equally appropriate. In such circumstances, nothing in the reservation would inflame "the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil*, 481 U.S. at 12 n.9. Where a correct reservation has been made, "[the litigant's] right to return [to federal court] will in all events be preserved." *England*, 375 U.S. at 421-22.

2

**[12]** For reasons similar to those discussed in Part III.A.2, the district court also erred in giving preclusive effect to the Superior Court's decision to strike the reassertion of Los Altos's *England* reservation. Although the Superior Court determined that the intervening California Court of Appeal's decision barred the reassertion of the reservation in the Superior Court, this decision has no effect on the validity of the reservation. Like the first Superior Court decision striking the original reservation as "irrelevant," striking the second *England* reservation may have removed it from the complaint, but it could not affect the fact that the state courts were on

---

[4]The district court's decision to abstain under *Younger* rather than *Pullman* has not been appealed and is thus not before us.

notice that Los Altos was there to adjudicate its state causes of action only and intended to return to federal court to adjudicate its federal claims.

## IV

**[13]** We hold that the district court erred in determining that the state courts' decisions to strike Los Altos's *England* reservations meant there was no valid reservation. We reverse and remand to the district court to determine the effect of a valid *England* reservation on the City's attempt to assert claim and issue preclusion against Los Altos's federal claims.

REVERSED in part and REMANDED. The panel will retain jurisdiction over any future appeals.