FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 8 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THOMAS GEARING; DANIEL GEARING, | No.   21-16688 |
| Plaintiffs-Appellants, | D.C. No. 3:21-cv-01802-EMC |
| v. | |
| CITY OF HALF MOON BAY, | OPINION |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted October 20, 2022
San Francisco, California

Before:  SIDNEY R. THOMAS and MILAN D. SMITH, Jr., Circuit Judges, and
MICHAEL J. McSHANE,* District Judge.

Opinion by Judge Milan D. Smith Jr.

---

*      The Honorable Michael J. McShane, United States District Judge for
the District of Oregon, sitting by designation.

**SUMMARY**[**]

**Civil Rights**

In an action brought pursuant to 42 U.S.C. § 1983 asserting a regulatory taking and related claims, the panel affirmed the district court's order granting the City of Half Moon Bay's motion to abstain pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), pending resolution of an eminent domain action in state court.

Plaintiffs sought to build housing on their properties in an area that under the City's Land Use Plan (LUP) was designated for public recreation and which severely restricted housing development. Plaintiffs took the position that California Senate Bill 330 (SB 330), enacted in 2019 to increase the stock of affordable housing in the state, required the City to approve their proposed development plan. After rejecting plaintiffs' proposal, the City informed plaintiffs that it intended to acquire their properties through eminent domain and made a purchase offer based on the properties' appraised values. Plaintiffs rejected the offer and filed this action in district court claiming, among other things, that the City effected a regulatory taking in violation of the Fifth and Fourteenth Amendments by rejecting their building proposal and enforcing LUP's restrictions on their property. The City then filed an eminent domain action in state court and a Motion to Abstain in the federal case pending resolution of the state action.

The panel first rejected plaintiffs' argument that *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) and *Pakdel v. City and County of San Francisco*, 141 S. Ct. 2226 (2021), which rejected state-forum exhaustion requirements for takings claims, precluded *Pullman* abstention in this case because abstention would force plaintiffs to litigate their federal claims in state court. The panel held that as an initial matter, neither *Knick* nor *Pakdel,* which address when a claim accrues for purposes of judicial review, explicitly limit abstention in takings litigation. Abstention allows courts to stay claims that have already accrued.

Even if *Knick* and *Pakdel* were read to prohibit abstention when it would create

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

effective exhaustion requirements for takings plaintiffs, those cases would not preclude abstention in this case. Here, the state court could adjudicate the eminent domain action without reaching the regulatory taking issue because eminent domain and regulatory takings suits compensate property owners for different injuries. Even if the regulatory taking issue could be analyzed as part of the fair market value calculation in the eminent domain action, it need not be. Moreover, plaintiffs had made a reservation under *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 421 (1964), in the state proceedings, which prevented the state court from ruling on federal issues.

The panel held that the requirements for *Pullman* abstention were met in this case. First, the complaint touched a sensitive area of social policy, land use planning. Second, a ruling in the state eminent domain action would likely narrow the federal litigation because it would require the state court to interpret LUP Section 9.3.5 and SB 330, and the proper interpretation of these regulations was relevant to the federal claims. SB 330 had not been interpreted by any California courts, and so its impact, if any, on local regulations like LUP Section 9.3.5 was unsettled. *Pullman's* minimal requirement for uncertainty therefore were satisfied in this case.

---

## COUNSEL

---

Kristen Ditlevsen Renfro (argued), Brian Manning and Gary Livaich, Desmond Nolan Livaich & Cunningham, Sacramento, California, for Plaintiffs-Appellants.

Matthew Dwight Zinn (argued), Benjamin Gonzalez and Tori Gibbons, Shute, Mihaly &Weinberger LLP, San Francisco, California, for Defendant-Appellee.

M. SMITH, Circuit Judge:

After the City of Half Moon Bay rejected Thomas and Daniel Gearing's proposal to develop housing on their properties, they sued the City in federal court pursuant to 42 U.S.C. § 1983, alleging a regulatory taking and related claims. The City then initiated eminent domain proceedings in state court to acquire the Gearings' properties. The City filed a motion in the federal case to abstain pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), pending resolution of the eminent domain action. The district court granted the motion, and the Gearings now appeal.

The Gearings argue that *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) and *Pakdel v. City and County of San Francisco*, 141 S. Ct. 2226 (2021), which rejected state-forum exhaustion requirements for takings claims, preclude *Pullman* abstention in this case because abstention would force them to litigate their federal claims in state court. They alternatively assert that the requirements for *Pullman* abstention are not met. We affirm because *Knick* and *Pakdel* do not apply here, and the requirements for abstention are met.

## FACTUAL AND PROCEDURAL BACKGROUND

The Gearings own six undeveloped parcels of property in the West of Railroad (WRR) area of the City of Half Moon Bay. Their properties are subject to the City's land-use restrictions. The City's Land Use Plan (LUP) zones the WRR area for

public recreation and severely restricts housing development. Under LUP Section 9.3.5, a landowner seeking to build in the WRR area is first required to submit a master plan that analyzes the impact of the proposed development on the area's conservation and recreation zones. The city council and an environmental review board must then approve the plan.

On October 1, 2020, the Gearings submitted a letter to the City, titled "Preliminary Application for Development from Thomas Gearing and Daniel Gearing Pursuant to Housing Crisis Act and Senate Bill 330," which they contend was an application to build housing on their properties pursuant to California Senate Bill 330 (SB 330). SB 330 was enacted in 2019 to increase the stock of affordable housing in the state, and it prohibits local agencies from rejecting affordable-housing proposals unless the agency makes a specific written finding that the project would have an adverse impact upon the public health or safety. Cal. Gov't Code § 65589.5(a)(1)(A), (d). The Gearings take the position that SB 330 requires the City to approve their proposed development project.

The City rejected the proposal and informed the Gearings that SB 330 did not require approval of their proposed project because a master plan for the WRR area had never been approved, as required by LUP Section 9.3.5. Three months later, the City informed the Gearings that it intended to acquire their properties through

3

eminent domain and made an offer to purchase the properties based on their appraised values, which the Gearings rejected.

On March 15, 2021, the Gearings filed this action in the district court, claiming, among other things, that the City effected a regulatory taking in violation of the Fifth and Fourteenth Amendments by rejecting their building proposal and enforcing LUP Section 9.3.5's restrictions on their property. On March 23, the City filed an eminent domain action in state court. The City then filed a Motion to Abstain in the federal case pending resolution of the state action, which the district court granted. The Gearings now appeal.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's *Pullman* abstention under a modified abuse of discretion standard. *Smelt v. County of Orange*, 447 F.3d 673, 678 (9th Cir. 2006). "We first review *de novo* whether the requirements for *Pullman* abstention are satisfied." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 782 (9th Cir. 2014). "If they are not, the district court has 'little or no discretion' to abstain; if they are, we review the decision to abstain for an abuse of discretion." *Id.* (quoting *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987)).

4

## ANALYSIS

*Pullman* abstention is "an equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions." *San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998) (*San Remo Hotel I*). It is appropriate where (1) the federal constitutional claim "touches a sensitive area of social policy," (2) "constitutional adjudication plainly can be avoided [or narrowed by] a definitive ruling" by a state court, and (3) a "possibly determinative issue of state law is doubtful." *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996) (quoting *Pearl Inv. Co. v. City & County of San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985)). Abstention serves the interests of both federalism and judicial economy. *See Pullman*, 312 U.S. at 501.

## I.     *Knick* and *Pakdel* Do Not Preclude *Pullman* Abstention

The Gearings first argue that the Supreme Court's recent rulings in *Knick* and *Pakdel* preclude *Pullman* abstention when abstention would subject a takings plaintiff to "effective exhaustion requirement[s]." Prior to *Knick* and *Pakdel*, a plaintiff challenging a state land-use policy under the Takings Clause of the Fifth Amendment—which provides that "private property [shall not] be taken for public use, without just compensation"—needed to overcome the exhaustion and ripeness hurdles set out in *Williamson County Regional Planning Commission v. Hamilton*

5

*Bank*, 473 U.S. 172 (1985). *Williamson County* held that takings plaintiffs may not bring their claims in federal court until they have tried, and failed, to obtain just compensation through state channels. *Id.* at 194–95. The Court held that a takings claim was not ripe until (1) "the government entity charged with implementing the [land-use] regulations has reached a final decision regarding the application of the regulations to the property at issue," *id.* at 186, and (2) "the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State," *id.* at 95.

*Knick* overturned the latter, and *Pakdel* clarified the former of these ripeness requirements. In *Knick*, the Court held that a property owner "acquires an irrevocable right to just compensation *immediately* upon a taking" and is not required to seek and be denied compensation in state court before bringing a federal claim. 139 S. Ct. at 2172 (emphasis added). The Court reasoned that requiring property owners to go first to state court would impose "an unjustifiable burden" by "effectively establish[ing] an exhaustion requirement." *Id.* at 2167, 2172.

In *Pakdel*, the Court rejected the imposition of an *administrative* exhaustion requirement on takings plaintiffs. *Pakdel* clarified that *Williamson County*'s "final decision" rule is "relatively modest" and does not require property owners to pursue every administrative channel theoretically available to them. 141 S. Ct. at 2229–31. Instead, "[a]ll a plaintiff must show is that there is no question about how the

6

regulations at issue apply to the particular land in question." *Id.* at 2230 (cleaned up).

The Gearings argue that these cases also preclude *Pullman* abstention in certain takings actions. As an initial matter, neither *Knick* nor *Pakdel* explicitly limit abstention in takings litigation. Neither case even addresses abstention. Rather, they address ripeness, which goes to *when a claim accrues* for purposes of judicial review. *See, e.g.*, *Knick*, 139 S. Ct. at 2170 ("[A] property owner has a claim . . . *as soon as* a government takes his property for public use without paying for it." (emphasis added)); *id.* at 2168 ("[An] owner has suffered a violation . . . when the government takes his property . . . and therefore may bring his claim in federal court under § 1983 *at that time*." (emphasis added)).

Abstention, on the other hand, allows courts to stay claims that have *already* accrued. *See, e.g., San Remo Hotel v. City & County of San Francisco*, 545 U.S. 323, 324 (2005) (*San Remo Hotel II*) ("[The court] invoked *Pullman* abstention after determining that a ripe federal question existed as to petitioners' facial takings challenge."). Abstention doctrines do not create a condition precedent to litigation; rather, they serve federalism by allowing a state court to decide state-law issues in the first instance. *See Harman v. Forssenius*, 380 U.S. 528, 534 (1965) ("[A]bstention may be proper in order to avoid unnecessary friction in federal[-]state relations[ and] interference with important state functions.").

7

The Gearings acknowledge this but argue that *Knick* and *Pakdel implicitly* preclude abstention in this case because it would subject them to "effective exhaustion requirement[s]"—"the same functional problem litigants faced under the now-repudiated *Williamson County*." They claim that *Knick* and *Pakdel* should be "broadly understood to [reject] any rule that poses an undue burden upon § 1983 litigants by requiring an effective exhaustion requirement."

The Gearings argue that abstention here forces them to litigate their regulatory taking claim as part of the state-court eminent domain action before they can seek federal judicial review. They assert that, because the eminent domain action requires the state court to determine the amount of compensation the City must pay for the Gearings' properties, the state court must also determine whether the City committed a prior regulatory takings by prohibiting development of the properties. They claim that "resolution of . . . the prior taking . . . is a prerequisite to the ascertainment of the scope of rights [that the City will] acquire[] in the eminent domain action and the appraisal of their worth." We understand their theory to be that, if the City's denial of the Gearings' building proposal and enforcement of LUP Section 9.3.5 constituted a taking, then the properties are more valuable than they otherwise would be, and the City must pay more compensation in the eminent domain action.

However, even assuming *Knick* and *Pakdel* were understood (*arguendo*) to broadly reject "effective exhaustion requirements" in the takings context, abstention

8

does not impose such requirements in this case.  The state court can adjudicate the eminent domain action without reaching the regulatory taking issue because eminent domain and regulatory takings suits compensate property owners for different injuries.  Eminent domain compensates property owners for the forced sale of their properties to the government; the property is transferred to the government, and the owner is paid the property's fair market value as of the date the government made a deposit on the property.  Cal. Code Civ. Proc. § 1263.310.  A regulatory taking action, on the other hand, compensates a property owner for "[t]he economic impact of [a] regulation . . . and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations."  *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538–39 (2005) (quoting *Penn Central Transp. Co v. New York City*, 438 U.S. 104, 124 (1978)); Steven J. Eagle, *Regulatory Takings* § 8-9(a) (2021) (surveying methods of calculating compensation proportional to harm and level of interference).

In this case, even if the regulatory taking issue *could* be analyzed as part of the fair market value calculation in the eminent domain action, it need not be.  The Gearings could defend the eminent domain action without challenging the constitutionality of the City's enforcement of LUP Section 9.3.5 or other regulations, and simply recover the fair market value of the property *as restricted* by those regulations.  When the eminent domain action concludes, they could then litigate

9

their regulatory taking claim in federal court and recover damages for the economic impact of the regulation and interference with their investment-backed expectations.[1] *See Lingle*, 544 U.S. at 538–39. The Gearings have not cited, and we are not aware of, any support for their assertion that the constitutionality of the City's restrictions on their properties must be adjudicated *before* compensation can be determined for purposes of eminent domain.

Moreover, the Gearings have made an *England* reservation in the state proceedings, which prevents the state court from ruling on federal issues. Under *England v. Louisiana State Board of Medical Examiners*, a litigant can explicitly reserve the right to have any federal questions that may arise in a state action be adjudicated in federal court after resolution of the state action. 375 U.S. 411, 421 (1964); *see Los Altos El Granada Inv'rs v. City of Capitola*, 583 F.3d 674, 687 (9th Cir. 2009). This provides "a backstop for cases . . . [where] a state court might mistakenly attempt to eliminate th[e] right" to try federal claims in federal court. *Los Altos El Granada Inv'rs*, 583 F.3d at 688. The Gearings have already taken

---

[1] To the extent the Gearings argue that this would result in issue preclusion that would bar their federal claims, they are incorrect, because issue preclusion only applies to issues that were "*actually litigated* and decided in the prior proceedings." *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 864 (9th Cir. 2021) (emphasis added). As noted, the Gearings would not be required to litigate their takings claim in the eminent domain action. Thus, this case is distinct from *San Remo Hotel II*, in which the property owners were required to litigate their takings claim in state-court proceedings in order for those claims to ripen for federal review. *See* 545 U.S. at 347.

10

steps to insulate their federal claim from state-court adjudication, and there is no reason to believe they cannot defend the eminent domain action while keeping their takings claim intact for federal review. Accordingly, even if *Knick* and *Pakdel* were read to prohibit abstention when it would create effective exhaustion requirements for takings plaintiffs, those cases would not preclude abstention in this case.[2]

## II. *Pullman*'s Requirements Are Satisfied

Alternatively, the Gearings argue that even if *Knick* and *Pakdel* do not preclude *Pullman* abstention, its requirements are not satisfied in this case. Those requirements are:

(1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.

(2) Such constitutional adjudication plainly can be avoided [or narrowed] if a definitive ruling on the state issue would terminate the controversy.

(3) The possibly determinative issue of state law is doubtful.

*Sinclair Oil*, 96 F.3d at 409. Each requirement is satisfied here.

### A. Touches sensitive area of social policy

---

[2] Plaintiffs also argue that litigating the eminent domain action first would create the risk that they would be deprived of the right to a jury trial on their takings claims. Assuming such a jury right exists in this case, the argument fails because, as explained, Plaintiffs will not have to adjudicate their takings claims in state court. In any event, they did not raise this issue before the district court, so it is waived. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008–09 (9th Cir. 2015).

We have long "held that land use planning is a sensitive area of social policy that meets the first requirement for *Pullman* abstention." *Id.* (cleaned up); *see Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001); *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir. 1984); *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1094–95 (9th Cir. 1976). In their complaint, the Gearings challenge the City's denial of their building proposal pursuant to LUP Section 9.3.5. This pleading alone satisfies the first *Pullman* requirement.

## B. Constitutional question could be narrowed by state-law ruling

The second factor requires that "the constitutional question [in the federal claim] could be mooted or narrowed by a definitive ruling on the state law issues." *San Remo Hotel I*, 145 F.3d at 1104. It is sufficient if the answers to the relevant state-law questions may "reduce the contours" of the federal litigation. *Smelt*, 447 F.3d at 679 (quoting *C–Y Dev. Co v. City of Redlands*, 703 F.2d 375, 380 (9th Cir. 1983)).

In this case, the ruling in the state eminent domain action will likely narrow the federal litigation because it will require the state court to interpret LUP Section 9.3.5 and SB 330, and the proper interpretation of these regulations are also relevant to the federal claims. To determine compensation in the eminent domain action, the state court must ascertain the Gearings' properties' fair market values. *See* Cal. Code

12

Civ. Proc. § 1263.310. Those values must account for any "lawful legislative and administrative restrictions on property [ that] a buyer would take into consideration" in valuing the properties. *City of Perris v. Stamper*, 376 P.3d 1221, 1233 (Cal. 2016). Accordingly, the state court will be required to construe LUP Section 9.3.5, SB 330, and any other regulations that encumber or otherwise apply to the Gearings' properties to decide proper compensation in the eminent domain action.

The Gearings' federal claims also implicate LUP Section 9.3.5 and SB 330. In their complaint, the Gearings assert that the City unlawfully applied LUP Section 9.3.5 to their property by denying their development proposal and that SB 330 directs the City to approve the proposal. In turn, part of the City's justification for denying the proposal was its understanding that SB 330 did not require approval of the Gearings' proposal because they did not comply with the "specific plan" provision of LUP Section 9.3.5. As such, a district court adjudicating the Gearings' federal claims will almost certainly need to ascertain the proper interpretation of LUP Section 9.3.5 and SB 330 and how they interact as applied to the Gearings' properties. Allowing the state court to first interpret these state-law rules would streamline and simplify the federal action and may narrow the federal claims.

C. **Involves unclear question of state law**

Because of the localized and complex nature of land-use regulations, we generally require only a minimal showing of uncertainty in land-use cases. *See, e.g.,*

13

*Sinclair Oil*, 96 F.3d at 410 (third factor met when "conventional inverse condemnation claim" was not "particularly extraordinary or unique" or "raise[d] a novel claim of statutory interpretation" because the local zoning plan "had not yet been challenged in the state courts"); *San Remo Hotel I*, 145 F.3d at 1105 (third factor met when plaintiff challenged specific application of land-use ordinance to his property); *Sederquist v. City of Tiburon*, 590 F.2d 278, 282 (9th Cir. 1978) (third factor met in case challenging local permitting regulations because "of the many local and state-wide land use laws and regulations applicable to the area in question").

Here, the interaction between SB 330 and the City's LUP Section 9.3.5 is uncertain. SB 330 has not been interpreted by any California courts, and so its impact, if any, on local regulations like LUP Section 9.3.5 is unsettled. We therefore find the minimal requirement for uncertainty satisfied in this case. *See Rancho Palos Verdes*, 547 F.2d at 1095 (finding third factor met in case challenging land-use restrictions when recently enacted statutes that may provide plaintiff relief had not yet been interpreted by state courts).

## CONCLUSION

For these reasons, we **AFFIRM** the district court's order granting the City's motion to abstain.

**AFFIRMED.**